No. 2281.
Second Circuit Appeal.

## W. P. WEMP v. SEMMELMAN, INCORPORATED.

(Feb. 3, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. Louisiana Digest Appeal—Par. 625.

The judgment of the trial court on a question of fact, namely, the existence of a verbal lease for one year, not being clearly erroneous, is affirmed.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Natchitoches, Hon. J. W. Jones, Jr., Judge.

REYNOLDS, J.

Action by W. P. Wemp to evict Semmelman, Incorporated, from his store building. Defendant denies plaintiff's right on the ground that he had a lease for twelve months from June 1, 1924. There was judgment for defendant and plaintiff has appealed.

Judgment affirmed.

C. B. McClung, and Rusca & Cunningham, of Natchitoches, attorneys for plaintiff and appellant.

Breazeale & Breazeale, of Natchitoches, attorneys for defendant and appellee.

OPINION.

This is an action by W. P. Wemp to eject his tenant, Semmelman, Inc., from his store building, on the ground that the lease under which defendant holds the building was not to become effective until it was reduced to writing and signed. Defendant claims that he had a verbal lease for twelve months.

The question to be decided is, whether there was between plaintiff and defendant a completed verbal contract of lease, which the law does not require to be reduced to writing, and a subsequent agreement that

it should be reduced to writing; or, was it a part of the bargain that the contract should be reduced to writing?

The trial judge, who was acquainted with the witnesses and heard them testify, decided the case in favor of the defendant. In support of his finding, we quote the following testimony:

MRS. W. P. WEMP.

(E. 2.)

Q. Did Mr. Semmelman speak to you with reference to a change in the way he was renting?
A. He wanted a lease drawn up.
Q. For what period of time?
A. For a year.

(E. 4.)

Q. When was the first time you found the Semmelmans and spoke to them about the advance in the rent.
A. I think it was first in March. I told him several other persons had been after it and I could get more for it, and I wanted to give him the first chance, and he said he thought we should wait on him and we agreed on it and I agreed to increase the rent on the first of June.

(E. 7.)

Q. In pursuance to that he had been paying you $100 per month?
A. Yes, sir, since the first of June.
Q. Gave you checks right along?
A. Yes, sir.
Q. Mr. McClung brought you a duplicate contract of lease, he gave you one, or did he give them both to you?
A. He gave them both to me and after they did not sign it and I did not think they wanted the lease, wanted to lease it, I destroyed it. I did not think they wanted the building.

(E. 8.)

Q. You went over to his store and saw him?
A. Yes, took it and he said he was busy, and he would read it later, I think he came in our place and I asked him something about it and he said he would see us about it.

Q. And didn't he tell you that that lease ought to incorporate a statement that certain furniture and fixtures in there were his?
A. He did not tell me that, but he told me that he said he wanted to make some changes and he did not say what to me.

(E. 9.)

Q. Your objection to the present tenants was based solely on the fact that they had not signed the lease?
A. Not solely.

(E. 11.)

Q. Did he give you a reason why he would not sign it?
A. The first time he said he was busy, and the other times he said he would sign it later.

W. P. WEMP.

(E. 13.)

Q. Did Semmelman object to the obligations?
A. No, sir, he said nothing except he wanted it changed to put something in there, so he could have his counters if he happened to move, or if something happened to me.

MRS. W. P. WEMP

(E. 19.)

Q. When did you actually agree on the $100 rent.?
A. He said he wanted me to wait until August, and I said no, and we finally agreed to start on the first of May at $100.
Q. The rent for $100 began after—became effective on the first of May, what month was it for?
A. It was for March.
Q. You agreed $100 was to be paid for May?
A. Yes, sir.
Q. When was it that Mr. Semmelman first asked you about a lease on the building?
A. After he paid the first $100 or just before.
Q. Then it was about the 6th of June or that time?
A. Yes, sir.

(E. 20.)

Q. Please state as fully as you can, the nature—substance of that conversation?

A. I told him that I had been offered more money for the building, and on account of him, I had not leased it, but from that on I wanted $100 per month for the property, and he persuaded me to wait until the first day of May, and then we agreed that he would give me $100 every month from then on.

Q. For twelve months commencing from the first of June, a 12 months' lease?

A. Yes, sir.

Q. That was the substance of your agreement in March?

A. I think it was.

(E. 21.)

Q. You received the $100 per month coming under the contract of March?

A. No, we received that before the lease was decided on.

Q. And you received that after the lease was decided on?

A. Yes.

Q. You had rented it to him and distinctly agreed on a year's rent from the first of June until the 30th day of May, 1925?

A. We did not have any talk over as to that, he asked me to fix the lease, and I had it fixed, and he was to read it over and I was to read it over, they were to sign it.

Q. Who furnished Mr. McClung with the data to draw the lease?

A. I told him to get it up.

Q. You told him what it was?

A. Yes, sir.

(E. 27.)

Q. How come it drawn, what agreement did you have?

A. We were to lease it for $100 for the year. I agreed to get up the lease and have him sign it, and I did it. I get the lease date mixed up.

Q. Who asked for the lease?

A. Semmelman wanted the lease.

(E. 28.)

Q. Did you agree to accept $100 per month for the building to commence on the first of June?

A. I suppose I did and had the lease drawn up.

Q. Did you accept it?

A. I accepted it.

(E. 29.)

Q. The $100 in June was in accordance with your agreement of May, and did you accept the payments in accordance therewith?

A. I accepted the payments, yes.

Q. You did?

A. Yes.

### I. SEMMELMAN.

(E. 33.)

Q. Will you state as clear and as brief a you can the conversation and agreements entered into between you and Mrs. Wemp, concerning the lease of this building to you? as evidenced by the duplicate lease attached, unsigned lease attached to your answer.

A. In the first part of February Mrs. Wemp came into the store and asked where I was and she told Abe to tell Isidore that for the year beginning March first the rent will be $100 per month, and when I came back Abe told me that, and I went to see Mr. Wemp because at that time he was posing as a friend of mine, and I saw him in front of our store and I told him that Mrs. Wemp had told Abe to tell me the rent would be $100 a month for the next year, and he said I have not got anything to do with any arrangements you make with Mrs. Wemp, is satisfactory with me. If she rents it at $50 it is all right with me. I then went in to see Mrs. Wemp and I said we have been laboring under disadvantages and it is very dull and she said I know times are hard, and I said why not wait until a little later and let's start the raise a little later, and I said July first will be all right, and she said she would not do it, and I said how about May first, and she said all right, and I said I would like to have a contract drawn up to that effect that I have the building for twelve months, and she said you do not need a lease, and she said we have been renting you the building on verbal agreement for four years, and she said we will not put you out, and she said we will never raise the rent more than a hundred dollars, and she said that is all I expect to get out of it, and she said she would get her attorney to draw up a lease to that effect commenc-

ing May first, 1924, for twelve months; and she did not bring in the contract and I mentioned it to her then, and she finally got Mr. McClung and he discussed it with me that he was drawing up the papers, and it was already in May, and she said go ahead and pay your rent and we will have the contract drawn up for twelve months beginning June first, and we drew up the contract to that effect, and she drawed it up in the latter part of May, and she brought it in and I was busy and I laid it on the desk. On June 6th, when I brought her the rent I told her I had brought the contract, and I said the only specification I would like to have put in there, if it is agreeable with you, that the same fixtures belong to me, and she said I do not know where I put my contract, I went behind the desk with her and she looked for her contract, her copy of the contract, and she could not find it, and she would bring it to me when she found it for me to sign it. I have been paying the rent from May in accordance with the contract, May first. It was to begin in May, and by our agreement we were to begin June first paying the $100.

Q. That document was the basis of the agreement?

A. Yes, sir. I have been carrying out the contract in good faith.

Q. Would you rent that store building by the month?

A. No, sir.

Under this evidence of both plaintiff and defendant we are persuaded that the preponderance of the testimony supports the contention of the defendant that he entered into a verbal lease with the plaintiff for the lease of their building for twelve months from June first, 1924, and that from that time until the filing of this suit, November 3, 1924, the defendant has been paying his rent in accordance with the terms of the verbal lease.

We also conclude that the defendant was the party who wanted the lease reduced to writing and the fact that subsequently to the date the verbal lease was entered into the parties agreed that it should be reduced to writing could not affect the already verbal lease agreement.

Defendant has filed a motion to dismiss the appeal on the ground of acquiesence, and able briefs have been filed on the part of both plaintiff and defendant; but the conclusion that we have reached on the merits of the case renders it unnecessary for us to pass on the application to dismiss the appeal on the ground of acquiesence.

For the reasons assigned, the judgment of the lower court is affirmed; plaintiff to pay the costs in both courts.